| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>**STERN, LAVINTHAL, FRANKENBERG &**<br>**NORGAARD**<br>Gary K. Norgaard, Esq. (9243)<br>John O'Boyle, Esq. (6337)<br>184 Grand Avenue<br>Englewood, New Jersey 07631<br>(201) 871-1333<br>*Attorneys for Block 106 MTGE, LLC* | |
| In Re:<br><br>BLOCK 106 DEVELOPMENT, LLC<br><br>Debtor. | Chapter 11<br><br>Case No. 11-27050 (DHS)<br><br>Judge:  Donald H. Steckroth |

**CERTIFICATION IN SUPPORT OF MOTION TO DISMISS CASE UNDER**
**11 U.S.C. SEC. 1112(b), OR TO CLASSIFY THE DEBTOR AS SINGLE ASSET**
**REAL ESTATE UNDER 11 U.S.C. SEC. 101(51B) AND 362(d)(3)**

Norman Weisfeld certifies as follows:

1.     I am a member of Block 106 Mtge, LLC ("Secured Creditor"), the movant herein. I make this certification in support of Secured Creditor's Motion to Dismiss the above-captioned Case, or, in the alternative, to Classify the Debtor as Single Asset Real Estate *nunc pro tunc* to the petition date.  I am familiar with this matter and the facts set forth herein.

2.     On or about June 28, 2006, the Provident Bank loaned Block 106 Development, LLC ("Block 106 Development," or the "Debtor") the amount of Six Million Dollars ($6,000,000.00).  Block 106 Development gave the lender a promissory note in the amount of the loan, and secured the loan with a mortgage covering its interest in certain real property, known as Block 106, Lot 1 (f/k/a Block106 Lots 1-32, Lot 16.1 & 17.1) and Block 111, Lots 2-14, Lot 13.1 & Lot 14.1 on the Official Tax Map of the City of Hoboken, NJ (the "Real

Property"). The Real Property is commonly known as 1320 - 1330 Madison Street, Hoboken, NJ.

3. The Real Property is vacant; there are no tenants or other occupants on the property. It produces no rent or other income. At no relevant time has there been any construction or development activity on the premises.

4. The note and mortgage are signed on behalf of the Debtor, "Block 106 Development, LLC, A Single Asset Limited Liability Company," by its members Tarragon Development Corporation and URSA Development Group, LLC.

5. In addition, simultaneously with the promissory note, Tarragon Development Corporation (one of the members in the Debtor) and Tarragon Corporation executed guarantys of the indebtedness. Annexed hereto as **Exhibit A** are true copies of the June 28, 2006 Note, Mortgage and Guarantys.

6. Block 106 Development defaulted on its obligations to Provident, and on January 9, 2008 Provident commenced a foreclosure action in the Superior Court of New Jersey, Hudson County Chancery Division (Docket No. F-1310-08). On January 25, 2008, Block 106 Development and guarantors executed a Note and Mortgage Modification Agreement and Reaffirmation of Guaranty. *Inter alia*, the modification extended the original maturity date of the loan to June 30, 2008. Annexed hereto as **Exhibit B** is a true copy of the January 25, 2008 Modification Agreement.

7. The Debtor and the guarantors failed to repay the indebtedness by the maturity date fixed in the Modification Agreement, and committed other acts of default under the loan documents.

2

8. On September 30, 2008, Provident assigned the loan documents and guarantys to Secured Creditor. Annexed hereto as **Exhibit C** is a true copy of the Assignment of 106 Mortgage and Assignment of 106 Loan Documents.

9. On January 12, 2009, Tarragon Corporation and Tarragon Development Corporation, filed petitions for relief under Chapter 11 of the Bankruptcy Code. Over the next month, approximately 23 other affiliates of these companies filed for chapter 11 relief as well. This court jointly administered the several Chapter 11 Debtors under the lead case no. 09-10555 DHS.

10. However, the Tarragon Debtors did not cause Block 106 Development, LLC to join the Tarragon bankruptcy case as a chapter 11 debtor. Instead, they provided Block 106 Development the financial and legal resources to stall Secured Creditor's foreclosure upon the Real Property, prolonging their control of the Debtor while isolating Block 106 Development's equity from their own creditors.

11. In the Second Amended Disclosure Statement filed by the jointly administered Tarragon Debtors, they insisted:

> An important factor in determining whether a project owner sought Chapter 11 protection was the existence of defaults on mortgages (primarily as the result of maturity) and the status of discussions with respective mortgage lenders regarding forbearance and related issues. More specifically, several Tarragon project-owning entities were omitted from the original Tarragon Chapter 11 filing based on perceived progress in lender discussions regarding a forbearance agreement or similar accommodations that would obviate the need, at least in the immediate term, to cause the entity to seek Chapter 11 protection.

*Second Amended Disclosure Statement of Tarragon Corp.*, Sec. III. F, p. 21. However, at no time since Secured Creditor acquired an interest in the mortgage did the Debtor herein or any of its members or affiliates make any effort to negotiate a forbearance agreement, or seek to discuss a similar accommodation with Secured Creditor.

3

12. On January 14, 2009, Secured Creditor filed a Complaint in Foreclosure with the Superior Court of New Jersey, Hudson County Chancery Division (Docket N. F-3002-09). Utilizing the same attorneys then representing the Tarragon Debtors before this Court, the Debtor filed a contesting answer to the complaint. Thus Secured Creditor was required to move to strike the answer; the Superior Court granted that motion in July, 2009.

13. But this did not end efforts of the Debtor and the Tarragon Debtors to prolong the foreclosure suit. When Secured Creditor sought a proof hearing and entry of final judgment of foreclosure, Block 106 Development opposed Secured Creditor's calculations of amounts due and the inclusion of its legal fees and costs within the final judgment amount. By order dated March 9, 2010, Hon. Thomas P. Oliveri of the Hudson County Chancery Division granted Secured Creditors' request for legal fees, allowing the fees in the amount requested, and directed Secured Creditor to submit its application for entry of final judgment to the Foreclosure Unit. Annexed hereto as **Exhibit D** is a true copy of the March 9, 2010 order.

14. Thereafter, the Secured Creditor submitted its proof of amounts due to the Foreclosure Unit, and Block 106 Development – still acting through the Tarragon Debtors' attorneys – opposed Secured Creditors' calculations. This caused the Foreclosure Unit to return the matter to Judge Olivieri, resulting in a further delay of the entry of final judgment.

15. Finally, in June, 2010, on the eve of the trial on the issue of the amounts due, and more than 17 months after the commencement of the foreclosure, Block 106 Development consented to the entry of Final Judgment in favor of Secured Creditor. Annexed hereto as **Exhibit E** is a true copy of the Final Judgment dated June 28, 2010; it establishes the amount of $5,181,961.62 as of June 16, 2010.

16. On June 18, 2010, this Court confirmed the Chapter 11 Plan proposed by the jointly administered Tarragon Debtors in Case No. 09-10555. The Tarragon Debtors contemplated a sale of the Real Property through the confirmed Plan. The confirmed Plan permits the reorganized Tarragon Debtors to seek approval of a sale of the Real Property under 11 U.S.C. Sec. 363 (despite the fact that Block 106 Development was not one of the jointly administered Tarragon Debtors), and designates Block 106 Development as a "Material Liquidation Asset."

17. Significantly, the bankruptcy estate(s) of the Tarragon Debtors paid the legal fees incurred by Block 106 Development in opposition to Secured Creditor's foreclosure action, and in defense of Secured Creditors corresponding note suit. Their counsel requested compensation for such service in the Third Interim Fee Application and Final Fee Application filed in the Tarragon Debtors' Chapter 11 case [Case No. 09-10555, Docket No. 1635 and 2086]. The monthly fee statements filed throughout the Chapter 11 case detail the time they expended in defense of the non-debtor Block 106 Development, as well as the amounts charged to the Tarragon Debtors' bankruptcy estates.

18. Despite their efforts to shift Block 106 Development's legal expenses upon their bankruptcy estates, the Tarragon Debtors made no effort to pay the taxes against the Real Property. In 2009, the City of Hoboken auctioned a tax certificate for the property; upon information and belief, the tax certificate holder has paid all taxes that have come due since the auction. The City of Hoboken has confirmed that the amount necessary to redeem the certificate as of June 7, 2011 is $368,480.53.

19. Also, regardless of their expensive and time-consuming effort to stall the Superior Court's entry of foreclosure judgment, at no time did the Debtor or the Tarragon Debtors propose

5

a forbearance agreement, a marketing plan, or any other resolution for the obligation to Secured Creditor.

20.     After entry of the June 2010 Foreclosure Judgment, the Hudson County Sheriff scheduled the foreclosure sale for April 28, 2011.  Just three days before the scheduled sale, Block 106 Development's counsel requested a four week postponement.  Annexed hereto as **Exhibit F** is a true copy of the Debtor's counsel's letter to the Hudson County Sheriff dated April 25, 2011.

21.     The sheriff granted the requested postponement of the sale, and rescheduled the sale for June 2, 2011.  But neither Block 106 Development nor the Tarragon Debtors attempted to use the additional time to try to negotiate with Secured Creditor.  Instead, they continued to remain silent until the eve of sheriff's sale.  Finally, on June 1, 2011, Block 106 Development invoked the Automatic Stay and prevented the sheriff's sale from taking place by filing its petition for Chapter 11 relief, commencing the above-captioned case.

22.     On its petition, the Debtor failed to classify itself as "Single Asset Real Estate" under 11 U.S.C. Sec. 101(51B).  But on the schedules it filed in connection with the petition, the Debtor confirms that it owns virtually nothing but the vacant Real Property; it estimates that the value of the Real Property is $10,000,000.00.  The only other assets listed on the Debtor's schedules are interests in two small escrow accounts, an alleged right to a refund from the City of Hoboken, and an obligation allegedly owed by one of its members.

23.     The Debtor's Statement of Financial Affairs confirms that the Debtor produces no income of any kind.

24.     Secured Creditor and the tax collectors are the only secured claims appearing on the Debtors' Schedule D.  As set forth above, the amount required for redemption of the tax

6

certificate as of June 7, 2011 is $368,480.53. The following is a breakdown of the amounts due Secured Creditor as of June 2, 2011:

| | |
|---|---|
| Judgment amount | $5,181,961.62 |
| Statutory pre-judgment interest | |
| (6/6/10 – 7/28/10 @3.5%) | $    21,749.44 |
| Taxed Costs/ Attorneys Fees | $    52,360.23 |
| SUBTOTAL | $5,256,071.29 |
| Post-judgment interest on subtotal | |
| (7/29/10 – 12/31/10 @3.5%) | $    79,206.55 |
| (1/1/11 – 6/2/11 @2.5%) | $    55,846.53 |
| TOTAL DUE ON JUDGMENT | $5,391,124.37 |
| Sheriff's Commission | |
| (6% of first $5,000.00; 4% on balance | $   215,744.98 |
| Estimated Sheriff's costs/deposit | $      1,500.00 |
| TOTAL DUE SECURED CREDITOR | $5,608,369.35 |

25. The Debtor scheduled no priority unsecured claims, and listed only six general unsecured claims, totaling $91,169.21. This includes $85,000.00 allegedly due an entity identified as "Fields Development."

26. The schedules reveal no agreement between the Debtor and any real estate broker, and provide no other evidence suggesting that the Debtor attempted to sell the Real Property at any time prior to commencement of this case.

27. The Debtor schedules no debt of any kind to any of its members or affiliates. However, in the Affidavit filed in support of the Debtor's application for approval of its employment of proposed counsel reveals that "Tarragon Corporation, [the direct parent of TDC,] asserts an unsecured claim against the Debtor based on an intercompany claim for loans advanced to the Debtor and intends to file a proof of claim against the Debtor". *Affidavit of Michael D. Sirota, Esq.*, Doc. 6-1, Paragraph 8.

28. The Debtor's statement of Financial Affairs indicates that the Debtor paid proposed counsel the amount of $100,000.00 in May, 2011. In the affidavit in support of the

7

application for approval of counsel, proposed counsel explains that $8,337.40 of this amount was utilized to pay for prepetition legal services, and the $91,662.60 balance is to be utilized as the retainer deposit. However, the Debtor offers no explanation as to how it raised the funds to pay its attorneys. It generates no income, and it lists no bank accounts on its schedules. Further, its response at No. 11 on the Statement of Financial Affairs indicates that it closed no bank account within year preceding the filing of the petition.

29.    The bad faith with which the Debtor, its members and its affiliates demonstrated through the commencement of this case is undeniable. The Debtor is a holding company; it conducts no operations and has no ability to pay its own expenses or to fund a plan of reorganization. Obviously, it relies completely on money borrowed from its affiliates – which are insolvent entities themselves, requiring relief in this Court. It has owned the Real Property for at least five years, and has made no discernable effort to sell it.

30.    The Debtor is completely controlled by the Tarragon Debtors, who instead of seeking to liquidate the Debtor in a prompt and efficient manner as contemplated by their own plan of reorganization, have used their legal resources and the property of their own bankruptcy estates to litigate against Secured Creditor and to prolong the foreclosure suit.

31.    Clearly, the Debtor and the Tarragon Debtors lack the inclination and ability to address their obligations to Secured Creditor through a plan of reorganization, and are simply speculating in the real estate market at Secured Creditor's expense. The conduct of the Debtor and the Tarragon Debtors prior to commencement of this case, along with their obvious inability to pay postpetition real estate taxes, municipal charges, insurance expenses or debt service, prove that the Debtor has no prospect of reorganizing.

32. With its affiliates' abetting, the Debtor prolonged its possession and control of the Real Property for three years past the extended maturity date of the mortgage loan, allowing tax liens to subordinate Secured Creditor's mortgage while making not the slightest effort to sell the property. On the eve of sheriff's sale, the Debtor sought this Court's protection, lacking even the ability to pay its postpetition expenses, much less the ability to fund a plan of reorganization. The Debtor can only hold the Real Property and hope that market conditions improve – just as it has done for the past five years. Under such circumstances, the Debtor's petition warrants dismissal for having been brought in bad faith under 11 U.S.C. Sec. 1112(b).

33. If the Court is not inclined to dismiss the case at this time, Secured Creditor respectfully re quests this Court to classify the case as a "single asset real estate" case under 11 U.S.C. Sec. 101(51B), *nunc pro tunc*, to the date on which the Debtor filed its petition, so that the Debtor is placed under the time limitations prescribed by 11 U.S.C. Sec. 362(d)(3) for the proposal of a plan of reorganization and/or the commencement of monthly payments.

34. The Debtor is undeniably a "single asset real estate" debtor. It is a holding company; the Real Property is the Debtor's only substantial asset; and the Debtor operates no business on the Real Property. It is difficult to imagine how this case could not be considered a single asset real estate matter. It appears the Debtor simply chose not to characterize the case that way when it filed its petition only because it sought to toll the running of the 90 day time limit imposed by Sec. 362(d)(3). Secured Creditor respectfully submits that under such circumstances, *nunc pro tunc* classification of the mater under Sec. 101(51B) is appropriate.

WHEREFORE, Secured Creditor respectfully requests this Court to Dismiss the above-captioned case under 11 U.S.C. Sec .1112(b) due to the Debtor's bad faith, or in the alternative, to classify the case as a single asset real estate case *nunc pro tunc*.

I certify that the foregoing statements are true.  I am aware that if the foregoing statements are willfully false, we are subject to punishment.


Dated:  6/14/11                                            ___/s/ Norman Weisfeld_____
                                                                                                 Norman Weisfeld, Member
                                                                                                 Block 106 Mtge, LLC


**J:\08N503\Block 106 Bkrtcy\Motion to Dism\2011-06-14 Cert**