# EXHIBIT A

RECORD AND RETURN TO:

## FORBEARANCE AND SETTLEMENT AGREEMENT

**THIS FORBEARANCE AND SETTLEMENT AGREEMENT** (this "Agreement") dated as of August 26, 2011, is by and between Block 106 Mtge., LLC ("Creditor"), Block 106 Development, LLC ("Obligor") and, with respect to paragraph 14 hereof, 1320-1330 Madison Street, LLC ("Madison").

## R E C I T A L S :

**WHEREAS,** Creditor, the assignee of the interest of The Provident Bank, acquired that certain mortgage loan with Obligor as set forth in that certain Mortgage Note dated June 26, 2006 in the original principal amount of Six Million and 00/100 ($6,000,000) Dollars (the "Obligation").

**WHEREAS,** Creditor is the holder of that certain Final Judgment of Foreclosure dated July 28, 2010 (the "Foreclosure Judgment"), entered by the Honorable Thomas P. Olivieri, regarding that certain real property known as Lots 1-16, 16.1, 17.1, 17-32 in Block 106 and Lots 2-13, 13.1, 14 and 14.1 in Block 111 on the City of Hoboken Tax Map (commonly known as 1200-1318 Madison Street, Hoboken, New Jersey) (the "Real Property").  Attached hereto as Exhibit A is a copy of the legal description of the Real

Property.  The Foreclosure Judgment was entered on account of Creditor's rights under and in connection with the Obligation.

**WHEREAS**, the Clerk of the Court issued a Writ of Execution to the Sheriff of Hudson County (the "Sheriff") dated October 25, 2010 directing the public foreclosure sale of the Real Property.

**WHEREAS**, the foreclosure sale for the Real Property was scheduled for April 28, 2011, and such foreclosure sale was noticed and advertised for such date (the "Foreclosure Sale").

**WHEREAS**, Obligor requested and obtained a postponement of the Foreclosure Sale after all due notice and advertisement had been made.

**WHEREAS**, upon Obligor's request, the Sheriff rescheduled the Foreclosure Sale to June 2, 2011, and the sale was advertised for such date.

**WHEREAS**, on June 1, 2011, Obligor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey (Case No. 11-27050 DHS) (the "Bankruptcy Case"), which filing enjoined Creditor and the Sheriff from proceeding with the sheriff's Foreclosure Sale scheduled for June 2, 2011 under the Bankruptcy Code's "Automatic Stay," 11 U.S.C. Sec. 362(a).

**WHEREAS**, Obligor and Creditor are desirous of resolving their differences and entering into a forbearance of Creditor's rights with respect to the Real Property and the Foreclosure Sale pursuant to the terms of this Agreement.

2

**WHEREAS,** Madison is a party to that certain Purchase and Sale Contract regarding the Real Property executed by Madison, as Seller, and Ursa Development Group, LLC ("Ursa"), as Buyer, dated as of August 20, 2004, as amended by (i) the First Amendment to the Purchase and Sale Contract dated as of September 15, 2004, (ii) the Second Amendment to Purchase and Sale Contract dated as of March 7, 2005, and (iii) the Third Amendment to the Purchase and Sale Contract dated as of August 30, 2005 (collectively, the "Contract").

WHEREAS, pursuant to that certain Assignment of Purchase and Sale Contract, dated September 16, 2005 (the "Contract Assignment"), Obligor acquired the right, title and interest of Ursa, as Buyer, and agreed to perform all of the contractual obligations of Buyer under the Contract.

WHEREAS, Obligor and Madison are desirous of confirming certain rights of Madison under the Contract.

**NOW THEREFORE**, in consideration of mutual benefits to be derived thereby, the parties hereto agree as follows:

1.      Obligor and Creditor each acknowledges and agrees that the outstanding amount of the Obligation as of September 1, 2011, including all principal, interest and fees due thereunder as of September 1, 2011, is Five Million Four Hundred Thousand ($5,400,000) Dollars (the "Amount").  In addition to the Amount, Creditor shall be entitled to recover its reasonable costs and expenses, including reasonable legal fees, in connection with its rights under this Agreement (including the exercise of any remedies

3

against Obligor and/or the Real Property) solely to the extent such costs and expenses arise after the date of this Agreement.  In addition, Obligor and Creditor understand and agree that at some date on or after the execution of this agreement (including the date of repayment of the amounts due hereunder or the date of any Foreclosure Sale, the Sheriff will charge a commission based on the entire amount of the Obligor's obligation due on the date of the repayment.  In addition to the Amount, on the date that the commission is due to be paid to the sheriff, Obligor shall pay the full amount of the commission paid (or to be paid) to the Sheriff, which shall be paid either (i) directly to the Sheriff or (ii) by simultaneously reimbursing Creditor for the payment to the Sheriff.

2.      On or before August 31, 2016 (the "Maturity Date"), Obligor shall repay Creditor the outstanding Amount and all other sums due Creditor, including interest, advances, costs and expenses, including legal fees, as provided for in this Agreement. Notwithstanding the foregoing, Obligor shall have the right to prepay the Amount, in whole or in part, together with all accrued interest, advances, costs and expenses due under this Agreement at anytime prior to the Maturity Date without penalty or premium.

3.      Simultaneously with the execution of this Agreement, Obligor and Creditor shall sign two (2) forms of Amended Consent Judgment attached as Exhibit B, one for submission to the Superior Court of New Jersey, Hudson County Chancery Division for execution and entry in the foreclosure matter, and the second for submission to the Superior Court Law Division for entry in Creditor's corresponding "note suit" (Docket No. HUD-L-802-09).   The Amended Consent Judgments shall fix the amount due

4

Creditor from Obligor at the Amount; shall provide for the accrual of interest at the rates set forth in Sections 4 and 5 below; and shall permit execution upon the property of Obligor, including but not limited to the Real Property.   Such Amended Consent Judgments shall be filed only upon entry by the Bankruptcy Court of the Dismissal Order (as defined below).   Subject to and in accordance with the terms and conditions of this Agreement, Creditor shall forebear from exercising its rights under the Amended Consent Judgments and from proceeding with the Foreclosure Sale.   Upon payment of the Amount together with all accrued interest, advances, fees, costs and other amounts due hereunder (including all sheriff's commissions), Creditor shall take all necessary actions to evidence the satisfaction in full and discharge of the Obligation, Foreclosure Judgment, Amended Consent Judgments and Writ of Execution.

4.     Commencing on September 1, 2011 and through and including August 31, 2013, interest shall accrue on the Amount at the rate of three percent (3%) per annum, regardless of whether the interest rates on judgments established by the Superior Court for such period differ from the rate fixed herein.

5.     Commencing on September 1, 2013 and through and including the Maturity Date, interest shall accrue on the Amount at the rate of five percent (5%) per annum, regardless of whether the interest rates on judgments established by the Superior Court for such period differ from the rate fixed herein.

6.     Within ten (10) days of the date of this Agreement, Obligor shall provide Creditor with evidence that Obligor has adequate liability insurance coverage with

5

respect to the Real Property under a policy naming Creditor as loss payee.  In addition, upon the commencement of construction of new buildings on the Real Property, Obligor shall use commercially reasonable best efforts to obtain and provide Creditor with evidence that the Real Property is properly and adequately insured for an amount no less than the amount sufficient to repay the all amounts due under this Agreement under a policy naming Creditor as loss payee.  Obligor shall use reasonable efforts to obtain and maintain such insurance coverage, as set forth herein, for so long as the obligations hereunder remain outstanding, and shall provide Creditor with proof of such insurance coverage (i) annually and promptly upon renewal of such insurance and (ii) upon reasonable request of Creditor.  Within ten (10) days of its receipt, Obligor shall provide Creditor with copies of any and all notices received in connection with such insurance coverage.

7.      Within thirty (30) days of the entry of the Dismissal Order (as defined below), Obligor shall provide Creditor with evidence of satisfaction of all delinquent municipal and public charges regarding the Real Property, including without limitation all delinquent real estate taxes, water charges, sewer charges, charges for utility and sanitation service, and other municipal and private charges and/or assessments regarding the Real Property, as well as all outstanding tax certificates and/or other liens held by third parties (including, but not limited to, the tax certificate held by US Bank Custodian/SASS Muni V and/or their successors or assigns) (the "Charges").  For so long as the obligations hereunder remain outstanding, Obligor shall pay all Charges as they

6

become due and owing.

8.    For so long as the Amount together with all accrued, interest, advances, fees, costs and other amounts due hereunder (including all sheriff's commissions) remains outstanding, Obligor shall not (i) sell or otherwise voluntarily or involuntarily transfer any interest in the Real Property to any party or (ii) voluntarily or involuntarily permit any party to encumber the Real Property or to acquire any mortgage, lien or other right (including, but not limited to, any Mechanics Lien, Materialman's Lien, Notice of Unpaid Balance or other lien, right or encumbrance) without (x) the prior written consent of Creditor, which consent shall not be unreasonably withheld, conditioned or delayed so long as all obligations hereunder are immediately repaid to Creditor or (y) the prior written of Creditor upon such other terms and conditions as Creditor may agree. Notwithstanding the foregoing, with respect to liens in favor of a source of construction financing ("Construction Lender") relating to the Real Property, the Obligor may request that Creditor subordinate its mortgage on the Real Property to such construction financing lien (the "Construction Loan"). Creditor shall not unreasonably withhold, condition or delay its consent to the Construction Loan provided that (x) the portion of the Real Property on which Creditor will continue to hold a senior lien has a value that exceeds the amounts due under this Agreement, (y) the terms and conditions of the Construction Loan are mutually and reasonably acceptable to Obligor and Creditor, and (z) Creditor and the Construction Lender enter into an intercreditor agreement in form and substance reasonably acceptable to Creditor. Subject to the terms of this Agreement,

7

Obligor shall otherwise be permitted to deal with the Real Property in any other manner that it deems commercially and reasonably appropriate, including entering into one or more leases for all or part of the Real Property so long as the term of such lease(s) does not extend beyond the Maturity Date.  The Obligor will use commercially reasonable efforts during the period from the date hereof and the Maturity Date to construct a residential housing project on the Real Property.  Such efforts shall include, but not be limited to, taking actions that are reasonably necessary in the Obligor's commercially reasonable business judgment to re-zone the Real Property to allow for residential development.

9.    In the event that the Obligor breaches the terms hereof, Creditor shall provide written notice of such breach to Obligor and Obligor shall have twenty-five (25) days to cure same; provided, however, that in the event Obligor is diligently pursuing such cure but the default still has not been cured, then Obligor shall have an additional twenty-five (25) day period within which to cure the default.  Nothing herein shall require Creditor to make any payments on behalf of Obligor; however, Creditor may, in its sole discretion, elect to pay any delinquent amounts itself, without prejudice of any of its rights hereunder.  In the event that Creditor pays any of such amounts, then in addition to the Amount, Obligor shall reimburse Creditor for such payments and all reasonable legal fees or costs incurred in connection with the enforcement of this Agreement.

10.    Creditor may, in its sole discretion, seek the issuance of a Writ of Execution directing the Hudson County Sheriff to schedule a foreclosure sale of the Real

Property, and, in the event that such Writ expires before the Obligor repays the amounts due hereunder or a sheriff's sale is conducted, Creditor may seek the issuance of appropriate Alias Writ(s) and/or Pluries Writ(s) directing the sale of the Real Property, provided however that any execution upon such writ(s) is subject to this Agreement. In the event Obligor fails to satisfy the Amount and other obligations owing hereunder in full by the Maturity Date or fails to cure any breach of its obligations under this Agreement, including Section 6, 7 or 8 hereof, by the applicable cure period set forth in Section 9, then upon seven (7) business days written notice to Obligor and Obligor's counsel, Creditor may present the applicable writ(s) to the Sheriff for the purpose of rescheduling and conducting the Foreclosure Sale.  Creditor shall have no obligation to accept a tardy cure of the default(s).  Obligor may elect to surrender a deed to the Real Property in lieu of the Foreclosure Sale, in which case all amounts due Creditor under this Agreement and due Madison under the Contract shall be deemed satisfied in full.

11.    Subject to paragraph 8 above, Obligor acknowledges that it is not permitted to sell or transfer the Real Property, or any part thereof, "subject to" the Amended Consent Judgments.  Obligor acknowledges that in the event it seeks to sell or transfer the Real Property or any part thereof, the Obligor shall pay the entire outstanding Amount together with all accrued interest, advances, fees, costs and other amounts due hereunder (including all sheriff's commissions) at or prior to the closing.

12.    Any notices required or permitted hereunder shall be provided by overnight mail or by certified mail, Return Receipt Requested, to the following:

9

Notices to Creditor:

    Block 106 Mtge., LLC
    Attention: Anthony Siniscalchi
    c/o A. Uzzo & Co.
    287 Bowman Avenue
    Purchase, New York 10577

with a copy to:

    Stern, Lavinthal, Frankenberg & Norgaard, LLC
    184 Grand Avenue
    Englewood, New Jersey 07631
    Attention:  Gary Norgaard, Esq.

Notices to Obligor:

    Block 106 Development, LLC
    71 Grand Street
    Hoboken, New Jersey 07030

with a copy to:

    Cole, Schotz, Meisel, Forman & Leonard, P.A.
    Court Plaza North
    25 Main Street
    Hackensack, New Jersey 07601
    Attention:  Michael D. Sirota, Esq.
            Warren A. Usatine, Esq.

Notices to Madison:

    1320-1330 Madison Street, LLC
    Attention: Anthony Siniscalchi
    c/o A. Uzzo & Co.
    287 Bowman Avenue
    Purchase, New York 10577

with a copy to:

    Stern, Lavinthal, Frankenberg & Norgaard, LLC

10

184 Grand Avenue
Englewood, New Jersey 07631
Attention:  Gary Norgaard, Esq.


13.    The parties hereto acknowledge that Creditor has asserted a claim (the "TDC Claim") against Tarragon Development Corporation in connection with the jointly administered case entitled *In re Tarragon Corporation et al*, Case No. 09-10555 DHS. Nothing herein shall affect the validity, allowance, claims or defenses relating to the TDC Claim in such case and all parties' rights are preserved.

14.    As reflected in the "Whereas" clause above, pursuant to the Contract Assignment, Obligor acquired the right, title and interest of Ursa, as "Buyer," and agreed to perform all of the contractual obligations of "Buyer" under the Contract.  The parties hereto each acknowledges and agrees that, solely as a result of the Contract Assignment, Ursa has no obligations to Madison as "Buyer" under the Contract.  The parties hereto (which, for purposes of the effectiveness of the preceding sentence, shall be deemed to include Ursa) each further acknowledges and agrees that nothing in this Agreement, in that certain Settlement Agreement between the Obligor and Creditor dated July, 2010 (the "Settlement Agreement"), or in any other document executed by any party hereto shall be construed to release, amend, alter, modify, expand or otherwise adversely affect or limit the rights or obligations of Madison as "Seller" under the Contract, and Madisonshall have the right to the payments set forth in section 2.5 of the Contract,

11

which provides as follows: "Six percent (6%) of Gross Sale price of each residential unit to be calculated at the Closing Sale of each unit and paid to Seller after twenty-five (25) unit have a Closing Sale and thereafter paid to Seller in increments of twenty-five (25) Closing Sales until the entire residential sale is completed.  In the event any residential unit is rented by the Buyer then Seller shall receive five percent (5%) of gross rental price paid to Buyer.  All monies due on rentals shall be paid on the first day of every quarter of the year."  Nothing herein shall (i) modify the release previously provided to Ursa under the Settlement Agreement and (ii) limit, waive or release any claims against Ursa arising after the date of the Settlement Agreement.

15.    The parties hereto agree that this Agreement shall be recorded in the land records of the County of Hudson.

16.    Obligor acknowledges that the Order Approving Obligor's Motion (I) Approving a Settlement and Compromise by and among the Obligor and Block 106 Mtg., LLC Pursuant to Fed. R. Bankr. P. 9019, (II) Dismissing the Obligor's Chapter 11 Case pursuant to 11 U.S.C. §1112(b) or, alternatively, pursuant to 11 U.S.C. § 305(a)(1); (III) Reinstating Claims of Unsecured Creditors, and (IV) Granting Related Relief (the "<u>Dismissal Order</u>") shall be in form and substance acceptable to Creditor.  (The form of Dismissal Order attached hereto as <u>Exhibit C</u> is in form and substance acceptable to Creditor.)  The Dismissal Order shall provide that (i) nothing therein or any subsequent order of the bankruptcy court shall stay, enjoin or otherwise interfere with Creditor's enforcement of this Agreement; and (ii) in the event that a subsequent petition under the

12

United States Bankruptcy Code is filed by or against Obligor (or any successor to

Obligor's interest in the Real Property), Creditor shall be entitled to *in rem* relief against

the Real Property and any automatic stay that may be applicable in any such subsequent

bankruptcy case shall not apply to the rights of Creditor (or any successor to Creditor's

interest in the Real Property) against the Real Property, including the right to enforce the

terms of this Agreement against the Real Property.   Without limiting the foregoing,

neither Obligor nor any successor to Obligor's interest in the Real Property shall oppose

an application by Creditor (or any successor to Creditor's interest in the Real Property)

for relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code or

otherwise consent to injunctive relief with respect to the rights of Creditor (or any

successor to Creditor's interest in the Real Property) against the Real Property.   The

Dismissal Order shall further acknowledge that Obligor's case is a "single asset real

estate" case as defined in section 101(51)(B) of the Bankruptcy Code.

17.    Creditor and Obligor shall reasonably cooperate with each other in the

dismissal of Obligor's pending Bankruptcy Case.

18.    The interpretation and construction of this Agreement shall be governed by

the laws of the State of New Jersey.

19.    No amendment, waiver or modification of this Agreement or any covenant,

condition, or limitation of this Agreement shall be valid unless memorialized in writing

and executed by the party to be charged therewith.

20.    This Agreement, the Amended Consent Judgments to be signed by the

parties simultaneously herewith, and the Dismissal Order shall constitute and contain the final and entire agreement between the parties hereto regarding to the subject matter hereof and is intended to be an integration of final expression of all prior negotiations, understandings and agreements between the parties.    Any other representations, undertakings or agreements with respect to the subject matter of this Agreement, whether oral, written or implied, are merged into and are superseded by the terms of this Agreement.    Nothing in this paragraph shall limit Madison's rights relating to the Contract and the Real Property as provided for in paragraph 14 hereof.

21.    This Agreement may be executed by facsimile signatures, which shall be deemed original, and in one or more counterparts, each of which shall be deemed to be a duplicate original, but all of which taken together, shall constitute a single instrument.

22.    This Agreement shall be binding upon the parties and their successors and assigns; provided, however, that no party may assign this Agreement without the prior written consent of the other parties.

23.    By the signatures below, the parties acknowledge that they fully understand and accept the terms contained in this Agreement, and represent and agree that their signatures are freely, voluntarily and knowingly given and that each has had the opportunity to consult with counsel prior to signing this Agreement.    The persons executing this Agreement hereby certify that they have the authority to do so.

24.    The Recitals set forth above are incorporated herein by reference.

[Remainder of this page intentionally left blank.]

14

49252/0001-7831324v2

**IN WITNESS WHEREOF,** the undersigned have executed this Forbearance and

Settlement Agreement as of the day and year first set forth above.

**Block 106 Development, LLC**

By: Ursa Development Group, LLC, its
Manager

By: _Mike Sciarra_
Name:  Michael Sciarra
Title:   Manager

**Block 106 Mtge., LLC**

By: _____
Anthony LoConte, Co-Managing Member

By:

_____
Norman Weisfeld, Co-Managing Member

15

**IN WITNESS WHEREOF,** the undersigned have executed this Forbearance and

Settlement Agreement as of the day and year first set forth above.

**Block 106 Development, LLC**

By:  Ursa Development Group, LLC, its
Manager

By:_____
Name:  Michael Sciarra
Title:   Manager

**Block 106 Mtge., LLC**

By:_____
Anthony LoConte, Co-Managing Member

By:

_____
Norman Weisfeld, Co-Managing Member

**IN WITNESS WHEREOF,** the undersigned have executed this Forbearance and Settlement Agreement as of the day and year first set forth above.

**Block 106 Development, LLC**

By: Ursa Development Group, LLC, its
    Manager


By:_____
Name:  Michael Sciarra
Title:   Manager

**Block 106 Mtge., LLC**


By:_____
Anthony LoConte, Co-Managing Member

By: _____

Norman Weisfeld, Co-Managing Member

15

49252/0001-7831324v2

15

**Signing with respect to Paragraph 14 hereof:**

1320-1330 Madison Street, LLC

By: _____
    NORMAN WEISFELD   , Manager

16

# **EXHIBIT A**

LEGAL DESCRIPTION OF THE PROPERTY

49252/0001-7831324v2

SCHEDULE "A"

**ATTACHED TO AND MADE A PART OF THAT CERTAIN MORTGAGE BY AND BETWEEN BLOCK 106 DEVELOPMENT, LLC AS MORTGAGOR, AND THE PROVIDENT BANK, AS MORTGAGEE, DATED JUNE 28, 2006**

ALL those certain lots, pieces or parcels of land and premises situate, lying and being in the City of Hoboken, County of Hudson, State of New Jersey, as more particularly described as follows:

All that certain lot, piece or parcel of land with the buildings and improvements thereon erected, situate lying and being in the City of Hoboken, County of Hudson, State of New Jersey:

BEGINNING at a point in the westerly line of Madison Street, (65 feet wide), said point being formed by the intersection of said westerly sideline of Madison Street, with the southerly sideline of Fourteenth Street, (100' wide), and from said point proceeding, thence;

1) South 13 degrees 04 minutes 00 seconds west, along said westerly sideline of Madison Street, for a distance of 850.00 feet to a point in the northerly sideline of Twelfth Street (50' wide), thence;

2) North 76 degrees 56 minutes 00 seconds west, along said northerly sideline of Twelfth Street, for a distance of 200.00 feet to a point in the easterly sideline of Monroe Street (65' wide), thence

3) North 13 degrees 04 minutes 00 seconds east, along said easterly sideline of Monroe Street, for a distance of 500.00 feet to a point, thence;

4) North 58 degrees 04 minutes 00 seconds east, for a distance of 70.71 feet to a point; thence

5) North 13 degrees 04 minutes 00 seconds east, for a distance of 175.00 feet to a point; thence

6) North 23 degrees 22 minutes 38 seconds east, for a distance of 127.05 feet to a point in the aforementioned southerly sideline of Fourteenth Street; thence

7) South 76 degrees 56 minutes 00 seconds east, along said southerly sideline of Fourteenth Street, for a distance of 127.26 feet to a point in the aforementioned westerly sideline of Madison Street, said point also being the point or place of beginning.

Said description was drawn in accordance with a survey prepared by Lapatka Associates, Inc., dated 1/28/05.

Also known as Lots 1-16, 16.1, 17.1, 17-32 in Block 106 & Lots 2-13, 13.1, 14, 14.1 in Block 111 on the City of Hoboken Tax Map.

BK: 14555   PG: 00018

775232-3

## **EXHIBIT B**

AMENDED CONSENT JUDGMENT

49252/0001-7831324v3

STERN, LAVINTHAL, FRANKENBERG & NORGAARD, LLC
105 Eisenhower Parkway, Ste. 302
P.O. Box 490
Roseland, NJ  07068-0490
Attorneys for Plaintiff

| | |
|---|---|
| BLOCK 106 MTGE., LLC,<br><br>     Plaintiff,<br><br>vs.<br><br>BLOCK 106 DEVELOPMENT, LLC<br>And STATE OF NEW JERSEY<br><br>     Defendants. | Superior Court of New Jersey<br>Chancery Division Hudson County<br><br>Civil Action No. HUD-L-802-09<br><br>Docket No.: F-3002-09<br><br>**AMENDED CONSENT FINAL<br>JUDGMENT OF FORECLOSURE** |

THIS MATTER came to the attention of the Court in or about February, 2009, upon the complaint of Block 106 Mtge., LLC ("Plaintiff"), through its attorneys, Stern, Lavinthal, Frankenberg & Norgaard, LLC , to foreclose upon certain real property known as Block 106, Lot 1 (f/k/a Block106 Lots 1-32, Lot 16.1 & 17.1) and Block 111, Lots 2-14, Lot 13.1 & Lot 14.1 on the Official Tax Map of the City of Hoboken, NJ (hereinafter "the Property").  Block 106 Development, LLC (the "Defendant" or "Mortgagor"), through its counsel, Cole, Schotz, Meisel, Forman & Leonard, PA, answered the complaint and opposed the relief requested by Plaintiff. The parties agreed to settle their differences, and on July 28, 2010 this Court entered a Consent Final Judgment of Foreclosure.   Thereafter, the Defendant sought Plaintiff's voluntary forbearance from execution upon the Property and Plaintiff requested the Defendant to agree to the within Amended Consent Judgment of Foreclosure as a condition to its agreement to forbear. The Plaintiff and Defendant entered into that certain Forbearance and Settlement Agreement dated as of August 26, 2011 (the "Forbearance Agreement"), a copy of which is annexed hereto

1

49252/0001-7775119v3

as Exhibit A.  This Court finds good cause to make the Amended Final Judgment of Foreclosure.

IT IS ON THIS                                        DAY OF                            , 2011

ORDERED ADJUDGED AND DECREED as follows:

1.      Plaintiff is entitled to the sum of $5,400,000.00 as of September 1, 2011.
Commencing on September 1, 2011 and through and including August 31, 2013, interest shall
accrue on such amount at the rate of three percent (3%) per annum.  Commencing September 1,
2013 and through and including August 31, 2016, interest shall accrue on such amount at the rate
of five percent (5%) per annum.  Plaintiff shall also be entitled to those other amounts expressly
provided for in the Forbearance Agreement.

2.      Plaintiff, or the successful purchaser at the Sheriff's Sale, duly recover against the
following Defendants: Block 106 Development, LLC and State of New Jersey, and all parties
holding under said Defendants, the possession of the premises mentioned and described in
Plaintiff's complaint, with the appurtenances, (included but not limited to mesne profits);
however, no possession is hereby awarded against any tenant protected by the provisions of the
New Jersey Anti- Eviction Statute (N.J.S.A. 2A:18-61,.1 et seq.) and no Writ of Possession shall
issue against such tenants, unless permitted by applicable law, notwithstanding anything herein
to the contrary.

3.      The Property shall be sold to raise and satisfy the several sums of money due, in
the first place, to Plaintiff, the sum of $5,400,000.00 together with all interest accruing thereon
pursuant to paragraph 1, above, from September 1, 2011, and such other amounts expressly
provided for in the Forbearance Agreement,  with Plaintiff's costs and legal fees to be  taxed, and
that an execution for that purpose be duly issued out of this court directed to the Sheriff of

2

Hudson County commanding said Sheriff to make sale according to law of the Property described in the Complaint, and out of the monies arising from said sale, that the Sheriff pay in the first place, to Plaintiff, Block 106 Mtge., LLC, or its attorney, said Plaintiff's debt with interest thereon as aforesaid, and in case more money be realized by the said sale that shall be sufficient to satisfy such several payments as aforesaid, that such surplus be brought into this Court to abide the further Order of this Court and that the Sheriff aforesaid take a report of the aforesaid sale without delay as required by the rules of this Court.

4.      The Defendants to this action stand absolutely debarred and foreclosed of and from all equity or redemption of, in and to said Property as shall be sold as aforesaid by virtue of this judgment, except as provided by 28 U.S.C. Sec. 2410.

_____
Honorable Thomas P. Olivieri, P.J. Ch.

The parties consent to the form and entry
of this Amended Final Judgment of Foreclosure

Cole, Schotz, Meisel, Forman & Leonard, PA
Counsel to Defendant, Block 106 Development, LLC

_____
By      Michael D. Sirota, Esq.
Dated:

3

49252/0001-7775119v3

Stern, Lavinthal, Frankenberg & Norgaard, LLC
Counsel to Plaintiff, Block 106 Mtge., LLC


_____

By:      Gary K. Norgaard, Esq.
Dated:

4

# **EXHIBIT C**
DISMISSAL ORDER

49252/0001-7831324v3

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>COLE, SCHOTZ, MEISEL,<br>FORMAN & LEONARD, P.A.<br>A Professional Corporation<br>25 Main Street<br>P. O. Box 800<br>Hackensack, NJ 07602-0800<br>(201) 489-3000<br>(201) 489-1536  Facsimile<br>Michael D. Sirota, Esq.<br>Warren A. Usatine, Esq.<br>Proposed Attorneys for Block 106 Development,<br>LLC, Debtor-in-Possession | |
| In Re:<br><br>BLOCK 106 DEVELOPMENT, LLC,<br><br>Debtor-in-Possession. | Chapter 11<br><br>Case No. 11-27050<br><br>Judge:  Honorable Donald H. Steckroth |

**ORDER APPROVING DEBTOR'S MOTION (I) APPROVING A SETTLEMENT AND COMPROMISE BETWEEN THE DEBTOR, BLOCK 106 MTG, LLC AND 1320-1330 MADISON STREET LLC PURSUANT TO FED. R. BANKR. P. 9019, (II) DISMISSING THE DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b) OR, ALTERNATIVELY, PURSUANT TO 11 U.S.C. § 305(a)(1); (III) REINSTATING CLAIMS OF UNSECURED CREDITORS AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) and five (5), is hereby **ORDERED**.

(Page 2)

| | |
|---|---|
| Debtor: | BLOCK 106 DEVELOPMENT, LLC |
| Case No: | 11-20750 (DHS) |
| Caption of Order: | ORDER APPROVING DEBTOR'S MOTION (I) APPROVING A SETTLEMENT AND COMPROMISE BY AND AMONG THE DEBTOR AND BLOCK 106 MTG, LLC PURSUANT TO FED. R. BANKR. P. 9019, (II) DISMISSING THE DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b) OR, ALTERNATIVELY, PURSUANT TO 11 U.S.C. § 305(a)(1); (III) REINSTATING CLAIMS OF UNSECURED CREDITORS AND (IV) GRANTING RELATED RELIEF |

THIS MATTER having been opened to the Court by Block 106 Development, LLC, the within debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, upon its motion (the "Motion)[1] for entry of an Order (I) Approving a Settlement and Compromise between the Debtor, Block 106 Mtg, LLC and 1320-1330 Madison Street, LLC Pursuant to Fed. R. Bankr. P. 9019, (II) Dismissing the Debtor's Chapter 11 Case Pursuant to 11 U.S.C. § 1112(B) or, Alternatively, Pursuant to 11 U.S.C. § 305(A)(1); (III) Reinstating Claims of Unsecured Creditors and (IV) Granting Related Relief; and the Court finding that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors; (iv) adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary and (v) after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein, it is hereby,

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

(Page 3)
Debtor:              BLOCK 106 DEVELOPMENT, LLC
Case No:             11-20750 (DHS)
Caption of Order:    ORDER APPROVING DEBTOR'S MOTION (I) APPROVING A
                     SETTLEMENT AND COMPROMISE BY AND AMONG THE
                     DEBTOR AND BLOCK 106 MTG, LLC PURSUANT TO FED. R.
                     BANKR. P. 9019, (II) DISMISSING THE DEBTOR'S CHAPTER 11
                     CASE PURSUANT TO 11 U.S.C. § 1112(b) OR, ALTERNATIVELY,
                     PURSUANT TO 11 U.S.C. § 305(a)(1); (III) REINSTATING CLAIMS
                     OF UNSECURED CREDITORS AND (IV) GRANTING RELATED
                     RELIEF

ORDERED that:

1.      The settlement by and between the Debtor, Block 106 Mtg, LLC and 1320-1330
Madison Street, LLC as set forth in the Forbearance and Settlement Agreement (the
"Agreement") annexed to the Motion as Exhibit A is hereby authorized and approved.

2.      The Debtor, Block 106 Mtg, LLC and 1320-1330 Madison Street, LLC are
authorized to perform their obligations under the Agreement and execute all documents
necessary to effectuate the settlement.

3.      The Debtor's Chapter 11 case is a "single asset real estate" case as defined in
section 101(51)(B) of the Bankruptcy Code and is hereby dismissed, effective upon the entry of
this Order.

4.      All unsecured claims against the Debtor shall be reinstated upon the entry of this
Order.

5.      The Debtor's professionals, Cole, Schotz, Meisel, Forman & Leonard, P.A.,
retained pursuant to an Order dated August 8, 2011, shall not be required to file final fee
applications in this case.

6.      All Orders previously entered in this Chapter 11 case shall remain in full force
and effect pursuant to Section 349 of the Bankruptcy Code.

49252/0001-7722353v2

(Page 4)
Debtor:              BLOCK 106 DEVELOPMENT, LLC
Case No:             11-20750 (DHS)
Caption of Order:    ORDER APPROVING DEBTOR'S MOTION (I) APPROVING A
                     SETTLEMENT AND COMPROMISE BY AND AMONG THE
                     DEBTOR AND BLOCK 106 MTG, LLC PURSUANT TO FED. R.
                     BANKR. P. 9019, (II) DISMISSING THE DEBTOR'S CHAPTER 11
                     CASE PURSUANT TO 11 U.S.C. § 1112(b) OR, ALTERNATIVELY,
                     PURSUANT TO 11 U.S.C. § 305(a)(1); (III) REINSTATING CLAIMS
                     OF UNSECURED CREDITORS AND (IV) GRANTING RELATED
                     RELIEF

7.      The Debtor shall pay all fees due to the United States Trustee pursuant to

28 U.S.C. § 1930(a)(6) through the entry of this Order within thirty (30) days from the date

hereof.

8.      Nothing herein or any subsequent order of the bankruptcy court shall stay, enjoin

or otherwise interfere with Block 106 Mtg, LLC's enforcement of the Agreement; and (ii)  in the

event that a subsequent petition under the United States Bankruptcy Code is filed by or against

the Debtor (or any successor to the Debtor's interest in the Property (as defined in the

Agreement), Block 106 Mtg, LLC shall be entitled to *in rem* relief against the Property and any

automatic stay that may be applicable in any such subsequent bankruptcy case shall not apply to

the rights of Block 106 Mtg, LLC (or any successor to Block 106 Mtg, LLC's interest in the

Property) against the Property, including the right to enforce the terms of the Agreement against

the Property.  Without limiting the foregoing, neither the Debtor nor any successor to Debtor's

interest in the Property shall oppose an application by Block 106 Mtg, LLC (or any successor to

Block 106 Mtg, LLC's interest in the Property) for relief from the automatic stay pursuant to

Section 362 of the Bankruptcy Code or otherwise consent to injunctive relief with respect to the

rights of Block 106 Mtg, LLC (or any successor to Block 106 Mtg, LLC's interest in the

Property) against the Property.

(Page 5)

| | |
|---|---|
| Debtor: | BLOCK 106 DEVELOPMENT, LLC |
| Case No: | 11-20750 (DHS) |
| Caption of Order: | ORDER APPROVING DEBTOR'S MOTION (I) APPROVING A SETTLEMENT AND COMPROMISE BY AND AMONG THE DEBTOR AND BLOCK 106 MTG, LLC PURSUANT TO FED. R. BANKR. P. 9019, (II) DISMISSING THE DEBTOR'S CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b) OR, ALTERNATIVELY, PURSUANT TO 11 U.S.C. § 305(a)(1); (III) REINSTATING CLAIMS OF UNSECURED CREDITORS AND (IV) GRANTING RELATED RELIEF |

9.      The form and manner of notice of the Motion is hereby determined to be

sufficient and adequate.

10.      This Order shall be effective immediately upon its entry by the Court.